MONETTE ROAD IMPROVEMENT DISTRICT *v.* DUDLEY.

Opinion delivered May 24, 1920.

1. PROHIBITION—PROCEEDINGS WITHOUT JURISDICTION.—Where it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the superior court exercising supervisory control over the inferior court may prevent such unauthorized proceedings by the issuance of a writ of prohibition.

2. PROHIBITION—WHERE REMEDY LIES.—The writ of prohibition lies where an inferior court is proceeding in a matter beyond its jurisdiction and where the remedy by appeal, though available, is inadequate.

3.  Prohibition—necessity of objection to jurisdiction.—Objection in the inferior court to its exercise of jurisdiction is not a jurisdictional fact upon which the power to issue the writ of prohibition depends, but is discretionary and is not necessary where it would obviously be futile and would result in unnecessary or hurtful delay.

4.  Highways—functions of assessment officers.—The function of the board of assessors of a road improvement district in assessing benefits, and of the board of commissioners in adjusting them, is not judicial in the ordinary sense, but is in the nature of a legislative power; and their acts are not subject to review on certiorari.

5.  Courts—jurisdiction of circuit courts to grant injunctions. Under Const., art. 7, § 15, authorizing the establishment of courts of chancery, the exercise of the power of creating chancery courts by the Legislature swept away the circuit court's jurisdiction to award injunctive relief.

6.  Highways—review of assessments on certiorari.—Since Road Laws, 1919, vol. 1, p. 105, creating the Monette Road Improvement District, provides for no review of assessments by the circuit court on appeal, but, on the contrary, provides exclusively for relief in the chancery court, there is no authority for review in the circuit court on certiorari.

Original application for prohibition to Craighead Circuit Court, Lake City District; *R. H. Dudley,* Judge; writ awarded.

*A. P. Patton* and *Rose, Hemingway, Cantrell & Loughborough,* for petitioner.

The writ of certiorari is restricted to reviewing a judicial or *quasi* judicial act, and injunction or some other remedy would be available to correct an error in the performance of a legislative, executive or administrative act; and, since the assessment of benefits is a legislative or administrative act, the circuit court was without jurisdiction to correct any error as to assessments for local improvements or cancel a contract under the rulings of our courts. 105 Ark. 65; 134 Ark. 121; 93 *Id.* 336-342; 94 *Id.* 239; 104 *Id.* 21; 62 *Id.* 196; 109 *Id.* 106; 126 *Id.* 125. See, also, *Mo.-Pac. Ry. Co.* v. *Conway Co. Bridge Dist.,* 142 Ark. 1.

*Sloan & Sloan,* also for petitioner.

1. The act of 1873 does not confer jurisdiction upon the circuit court to grant injunctive relief, and the court was without jurisdiction. 83 Ark. 54-61; Kirby's Digest, § 3966; 93 Ark. 336-41; 94 *Id.* 235; 104 *Id.* 16; 33 *Id.* 690; 74 *Id.* 421. If it was the intention of the act of 1873 to confer injunctive jurisdiction upon a law court, the act was repealed by the act creating a separate chancery court. Acts 1903, p. 314; 57 Ark. 528; 44 *Id.* 377; 80 *Id.* 145-9; 116 *Id.* 490; 95 *Id.* 618; 109 *Id.* 250; 73 S. W. 368-372; 6 A. & Eng. Enc. Law (2 ed.), p. 1048; 12 C. J. 816; 76 Ark. 184-191.

2. The circuit court has no jurisdiction of the alleged certiorari proceedings. Spelling on Inj., etc., §§ 1955-6; 2026; 43 A. & C. 682 (N. J.) ; 35 Ark. 95; 97 N. Y. 37; 96 Ark. 251-263. See, also, 17 Standard Enc. Pro. 797-8. No cause of action furnishing jurisdiction to the circuit court for certiorari was stated in the complaint, and the cause should have been transferred to chancery as prayed.

*J. F. Gautney* and *Lamb & Frierson,* for respondent.

1. The writ of prohibition should not issue. 73 Ark. 66; 88 *Id.* 153. It is a writ of discretion and not of right, and never issues when there is any other remedy. 22 R. C. L. 5. In this case there is another remedy by appearing in court and appealing if the decision is adverse. 124 Ark. 238; 96 *Id.* 332; 101 *Id.* 106; 33 *Id.* 161; 66 *Id.* 211; 77 *Id.* 140; 74 *Id.* 217; 33 *Id.* 191; High on Extr. Legal Rem., §§ 770-1; 74 Ark. 217; 56 *Id.* 511; 115 *Id.* 317.

2. Certiorari does not lie. 16 C. J. 126, § 75; 40 Ark. 507. It does not lie to correct errors or irregularities and can not be used as a substitute for appeal, save where the right of appeal is lost without fault of petitioner, and lies to correct a lower tribunal only when it proceeds illegally and there is no other method of arresting action. 37 Ark. 318; 17 *Id.* 580; 25 *Id.* 476; 30 *Id.* 148; 39 *Id.* 399; 43 *Id.* 33; *Ib.* 341; 44 *Id.* 509; 47 *Id.* 511; 51 *Id.* 281; 101 *Id.* 522; 96 *Id.* 344; 61 *Id.* 605; 61 *Id.* 287;

131 *Id.* 211; 98 *Id.* 343; 70 *Id.* 71. A finding of fact by the circuit court will not be reviewed on certiorari. 45 *Id.* 94; 73 *Id.* 604.

3. The complaint showed jurisdiction in the circuit court and the order rendered was within its jurisdiction. Kirby's Digest, §§ 1315-1318-19. A board acting as in this case necessarily assumes judicial functions and is subject to certiorari. 11 C. J., pp. 121-2, par. 68; 62 Ark. 196-201; 70 *Id.* 568; 60 N. E. 187; 109 Ark. 100; 126 *Id.* 125. *Certiorari* lies to quash a void assessment and levy. The jurisdiction of the circuit judge to issue the writ of certiorari is unquestioned. 37 N. W. 809; 51 L. R. A. 111; 20 L. R. A. (N. S.) 946. Circuit courts have exclusive jurisdiction of all matters not vested in other courts by our Constitution. Art. 7, § 11; Kirby's Dig., §§ 1304-5. The jurisdiction of the circuit court was not ousted by subsequent legislation. 11 C. J., § 578; 98 Ark. 63; 30 *Id.* 568; 1 Pom., Eq. Jur. (4 ed.), § 279; 116 Ark. 490. The Legislature can not enlarge the jurisdiction of our chancery courts. 80 Ark. 145; 95 *Id.* 618; 116 *Id.* 490; 115 *Id.* 437. See, also, 111 Ark. 144; 66 *Id.* 201. The circuit court had jurisdiction because of an "illegal exaction." Kirby's Digest, § 3966; Const., art. 16, § 13; 33 Ark. 436-441.

4. The assessment is void and should be quashed by certiorari. Page & Jones on Spec. Assmt., § 568; 1 *Id.* 783. The property is not properly described upon the assessment books and is invalid. 2 Page & Jones on Spec. Assmts., § 886, p. 1505 *et seq.*, p. 1524. The mutilation by the commissioners of the assessments since filing same as a public record vitiates the assessment. 2 Page & Jones, Spec. Assmts., §§ 886, 909; 74 N. E. 726-729.

5. Neither prohibition nor certiorari will lie. Authorities *supra,* and 112 Ark. 437; 80 *Id.* 411; 84 *Id.* 329.

McCulloch, C. J. Monette Road Improvement District is, as its name implies, a road improvement district formed for the purpose of improving certain roads,

and was created by a special statute enacted by the General Assembly of 1919 (Act No. 58, Acts 1919, Regular Session, volume 1, page 105).

Application is made to this court on behalf of said district for a writ of prohibition directed to the Honorable R. H. Dudley as judge of the second division of the circuit court of the Second Judicial Circuit to prevent the circuit court of Craighead County, Lake City District, from hearing and determining a certain proceeding brought up to that court on certiorari, issued by said judge, and returnable to said circuit court, involving the validity of the acts of the commissioners of said district in assessing benefits and in attempting to construct the improvement.

It is alleged in the petition filed here that Alex McDonald and certain other persons filed their complaint in said circuit court, praying for a writ of certiorari directed to the commissioners of said district to bring up the assessment of benefits made by the commissioners and to quash the same, and to enjoin the commissioners of the district from proceeding with the construction; that the circuit court is entirely without jurisdiction in the premises and that the petitioners appeared in court and moved to dismiss the proceedings for want of jurisdiction, but that the court overruled said motion and proceeded to issue a writ of certiorari as prayed for by the plaintiffs in that cause, and made it returnable at the next term of that court, and that the judge also issued a restraining order to prevent the petitioner and the commissioners of the district from proceeding with the work of improvement. A copy of the complaint in the proceedings below and the other pleadings are exhibited with the petition.

The circuit judge appears here by counsel and files a response in which he admits that he has issued the writ of certiorari, as alleged, returnable to the circuit court, but denies that the writ was heard or issued by the court or that the petitioner herein had appeared before the court for the purpose of objecting to the issuance

and hearing of the writ, and alleges, on the contrary, that the petition for a writ of certiorari was presented to the circuit judge at chambers in vacation and was heard by him, and that the writ of certiorari and also the temporary injunction were issued by him in vacation, returnable to the circuit court to be heard by that court in term time. The judge also alleges in his response that the matters and things set forth in the complaint in the proceedings below are within the jurisdiction of the circuit court, and he denies that he exceeded his jurisdiction in granting the certiorari and injunction.

The first question which arises for our decision is whether or not prohibition is the appropriate remedy and is available to the petitioner under the circumstances of this case. The facts, when reduced to the simplest form, as bearing on this particular question are that the plaintiffs in the action instituted in the circuit court appeared before the circuit judge in vacation for the purpose of procuring the issuance of a writ of certiorari to bring up the proceedings of the board of commissioners of the improvement district, and to obtain an injunction to restrain further proceedings by the commissioners of the district until the cause could be heard in the circuit court; that the commissioners, as the representatives of the district, appeared by counsel before the circuit judge at the hearing and objected to the exercise of jurisdiction by the court, and that a writ of certiorari and also of temporary injunction was issued by the judge over the protest of the petitioner.

The scope of the writ of prohibition is too well known to be in doubt. In the recent case of *Ferguson* v. *Martineau*, 115 Ark. 317, this court quoted with approval the following statement of the law from a well-known text-writer on the subject: "The writ of prohibition is that process by which a superior court prevents an inferior court or tribunal from usurping or exercising jurisdiction with which it has not been vested by law." Spelling on Injunctions and Extraordinary

Remedies, § 1716; Shortt on Information, Mandamus and Prohibition, p. 436.

The last named text-writer, at the place indicated, laid down the rule as follows: "The broad governing principle is that a prohibition lies where a subordinate tribunal has no jurisdiction at all to deal with the cause or matter before it; or where, in the progress of a cause within its jurisdiction, some point arises for decision which the inferior court is incompetent to determine. But a prohibition will not lie where the inferior court has jurisdiction to deal with the cause and with all matters necessarily arising therein, however erroneous its decision may be upon any point."

In the case of *Finley* v. *Moose,* 74 Ark. 217, we stated the same rule with reference to the office of the writ of prohibition, with the following qualification: "If the existence or non-existence of jurisdiction depends on contested facts which the inferior tribunal is competent to inquire into and determine, a prohibition will not be granted, though the superior court may be of the opinion that the questions of fact have been wrongly determined by the court below, and that their correct determination would have ousted the jurisdiction."

So it is thus settled that where it appears that an inferior court is about to proceed in a matter over which it is entirely without jurisdiction under any state of facts which may be shown to exist, then the superior court exercising supervisory control over the inferior court may prevent such unauthorized proceedings by the issuance of a writ of prohibition. The essential thing is, that it must be shown that the inferior court is about to proceed beyond its jurisdiction, and that fact is said to be the jurisdictional one upon which the right of the supervising court to issue the writ of prohibition depends.

It is contended by counsel for the respondent that the remedy by prohibition not being an absolute one, but discretionary, the writ should be denied where there is a remedy by appeal or otherwise, even though the

court sought to be restrained was about to proceed beyond its jurisdiction. They cite in support of their contention the case of *Weaver* v. *Leatherman,* 66 Ark. 211. This contention is based upon a misconception of the effect of the ruling in the case just cited. If the absence of the right of appeal was essential to the issuance of a writ of prohibition, then that remedy would be entirely unavailable in any case, for under our Constitution the right of appeal is granted in all judicial proceedings. The true test is, as stated in the case already cited, whether or not the court is proceeding beyond its jurisdiction; and when that state of facts is shown to exist, the remedy by prohibition is the appropriate one. A litigant is not bound to submit to the exercise of jurisdiction not authorized by law, even though he has the right of appeal after the exercise of the jurisdiction has been consummated and has resulted in a judgment from which he can appeal. The remedy by appeal is afforded from an unjust judgment, whether it be void or merely erroneous (*Pritchett* v. *Road Improvement District,* 142 Ark. 509) ; but the remedy by prohibition is afforded as a protection against a wrongful attempt to exercise jurisdiction unauthorized by law. The two remedies are independent and one may be invoked where the other can not be, and prohibition may be invoked under circumstances where the remedy by appeal is available though inadequate.

Again it is urged by counsel for respondent that this is an attempt to control the action of the circuit judge, and they invoke the doctrine that the remedy by prohibition is available only to prevent the exercise of jurisdiction by a court and not by a judge. In the case of *Reese* v. *Steel,* 73 Ark. 66, we expressly left undecided the question whether or not prohibition was the appropriate remedy against judicial or quasi-judicial action of a judge in vacation, and whether or not the remedy was confined to the control of judicial action by a court. Nor is that question involved in the present case. The action of the circuit judge has, in the present case, completely accomplished its purpose in the issuance of the

writ, and the present effort of the petitioner is to control the action of the circuit court and to prevent it from proceeding in a matter alleged to be entirely beyond its jurisdiction. It is true that in the petition filed here it is alleged that the court issued the writ and is about to hear and determine it and that the court also issued an injunction, and it is shown by the respondent that this allegation is not true with respect to the issuance of the two writs; but the facts, as shown by the petition and the response thereto, are that the writ of certiorari is returnable to the circuit court and that that court is about to proceed to an adjudication of the matters and things involved in that controversy. Now this entitles the petitioner to the remedy prayed for here, unless other grounds appear for the denial of the remedy.

The response raises the question of the right of the petitioner to this remedy without first appearing before the circuit court and objecting to the exercise of jurisdiction. It is conceded that the petitioner appeared before the circuit judge and made objection to the exercise of jurisdiction, and that the judge overruled the objection. It appears from the exhibits to the pleadings here that the circuit judge made a written order expressing his opinion that the circuit court had jurisdiction to entertain the proceedings, and in his response here the learned judge adheres to his conclusion that the circuit court has jurisdiction of the cause. But it is insisted that the petitioner must first appear before the court itself and make the protest there in term time, notwithstanding the ineffectual protest before the judge who granted the writ and who is the presiding judge of that court. This court in many decisions has adhered to the rule that as a matter of practice a writ of prohibition will not be issued, unless objection to the exercise of jurisdiction is made to the court in which the proceedings are pending. *Reese* v. *Steel, supra.*

The court has never had occasion to state the exceptions to that rule, or to declare whether or not there are in fact any exceptions. It has been decided here,

however, that the form of the exception is immaterial, and that any sort of plea to the jurisdiction of the court will justify the issuance of a writ of prohibition. *State ex rel. Butler* v. *Williams*, 48 Ark. 227.

In Ruling Case Law, volume 27, the following is stated to be the rule of procedure established by the authorities: ''As a general rule, a writ of prohibition will not be issued to an inferior court unless the attention of the court whose proceedings it is sought to arrest has been called to the alleged lack of jurisdiction, the foundation of the rule being the respect and consideration due to the lower court and the expediency of preventing unnecessary litigation. This requirement is made by rule of court in some jurisdictions. The objection in the lower court can not be said to be jurisdictional, and the higher court may and will proceed without such objection in proper cases. The rule is one of discretion only, and is not in any sense rigid or arbitrary. Thus no objection in the court sought to be prohibited need be made where the proceeding is *ex parte,* and there was no opportunity to object; where the applicant was prevented by artifice or fraud from making objection; where the lack of jurisdiction is apparent on the face of the proceedings; where the intention of the inferior court to act beyond its jurisdiction is made apparent in any way and it is obvious from the whole proceedings that such an application would be futile; or where the necessary delay would be highly injurious to the interests of the applicant. The matter of judicial courtesy should yield to the substantial personal rights of litigants, such as a sacrifice to their liberty.'' Numerous authorities are cited in support of the rules thus stated.

Particular attention is called to that part of the foregoing statement of the law to the effect that the objection to the exercise of jurisdiction by the lower court is not a jurisdictional fact upon which the power to issue a writ of prohibition depends, but is merely a rule of discretion. This, we think, is the correct view of the

matter and it will necessarily follow, under this rule, that where it is obvious that an objection made to the court itself would be futile and would result in unnecessary or hurtful·delay this ought to and does form an exception to the general rule of discretion that, before a writ of prohibition can be asked for, objection to the exercise of that jurisdiction must be made to the court. This exception is well sustained by the authorities. See case note to *St. Marys* v. *Woods,* 21 Am. & Eng. Ann. Cas., p. 168; *Charleston* v. *Littlepage* (W. Va.), 51 L. R. A. (N. S.) 353; *State ex rel.* v. *Alloe,* 151 Mo. 1; *State ex rel.* v. *Bright,* 224 Mo. 514; *Havemeyer* v. *Superior Court,* 84 Cal. 397.

In the case of the *State ex. rel.* v. *Bright, supra,* the Supreme Court of Missouri, after having noticed the fact that it was not shown that any exceptions had been made to the lower court, said that the appearance of the judge in that court joining with the parties to the litigation in affirming the right of the court to proceed with the case rendered it unnecessary for the petitioner to appear before the court for the purpose of challenging the jurisdiction. This rule was, in effect, applied by our court in the case of *Russell* v. *Jacoway,* 33 Ark. 191. In that case an election contest over the removal of the county seat was involved, and the circuit judge granted in vacation a writ of certiorari to bring up the proceedings in the county court for review and the adverse parties appeared before the circuit judge and opposed the application for want of jurisdiction of the subject-matter. It was not shown that there was any objection made in the circuit court, but this court granted the writ of prohibition and vacated the writ issued by the circuit judge. We think that this rule is founded on sound reason, for it only affects the discretion of the court and is at most only a rule of practice. Why then should the petitioner be required to go before the circuit court to make an objection to the exercise of jurisdiction where it is morally certain that the objection would be unavailing? Since the circuit judge has delib-

erately overruled an objection to the jurisdiction and comes into this court now maintaining that the court over which he presides and before which this cause will come on for hearing, unless restrained, has jurisdiction of the subject-matter, there is no ground for assuming that he will change his mind and sustain the objection to the jurisdiction when the circuit court convenes. Our conclusion therefore is that the petitioners are entitled to a writ of prohibition, if as a matter of fact the circuit court is about to proceed beyond its jurisdiction, and that is the next question to which we will address ourselves.

The statute creating the district contains a provision in section 14 that the "construction cost of the improvements of the road herein called for, not including interest on borrowed money, shall not exceed in cost thirty per cent. of the values of all lands and real estate and real property in the district, as shown by the last county assessment," and the question was brought to this court for decision, whether or not this applied to the last county assessment preceding the passage of the statute or to any county assessment made prior to the assessment of benefits, and we decided that it applied to the assessment preceding the passage of the statute. *Watson* v. *Boydstun,* 141 Ark. 184. It was shown in that case that the cost of the construction would exceed thirty per cent. of the values of lands according to the county assessment, and the General Assembly at the special session in January, 1920, enacted an amendatory statute raising the limitation to forty per cent. of the assessed value of the property, instead of thirty per cent., and amending the statute creating the district in other respects. The statute, as a whole, describes the boundaries of the district, the route of the roads to be improved, names the commissioners and the authority to construct the improvement, to borrow money and collect assessments on the benefits accruing to the lands, and provides for a board of assessors to value the anticipated benefits, and the filing of the list of assessments with the county clerk

and the publication of notice of the time and place of the meeting of the commissioners for the purpose of hearing complaints against said assessments.

Section 13 provides that "any party who may have complained in writing of any of said assessments of benefits or damages, and who feels aggrieved by the action of the commissioners after the hearing herein provided for; any other person whomsoever who may have any objections to any assessment of benefits or damages, or to any other proceedings under this act or action of the commissioners, shall file his complaint thereof in the chancery court having jurisdiction within ten days after the hearing by the commissioners herein provided for, and any party not complaining within that time shall be deemed to have waived any objections that he may have to any of said assessment of benefits or damages, and shall not be heard to complain in law or equity thereafter."

The complaint in the proceedings sought to be prohibited alleges, in substance, that the assessment of benefits had been made and filed with the county clerk and notice thereof given, and that all of the plaintiffs in that proceeding had appeared before the board of commissioners herein named and objected to the alleged assessments on the ground that no valid assessment had been made as provided by the statute; that the assessment list was "a mere jumble of words and figures and to a great extent meaningless," and that it is unintelligible. It is further alleged that the plans adopted by the commissioners contemplate two sets of improvements, one a drainage system and the other the construction of the roads, which would require two separate assessments. Various other matters are alleged in the way of threatened proceedings by the board of commissioners not authorized by the statute. The prayer of the complaint was that the plans adopted by the commissioners and the assessment list be brought to the circuit court on certiorari, and that on final hearing the same should be quashed. The prayer of the complaint was also that the

contract for the construction of the improvement and the sale of bonds be enjoined.

It is manifest therefore from the language of the complaint that injunctive relief is sought against the proceedings undertaken by the commissioners of the district, and relief against the assessment list alleged to be inaccurate and unintelligible is sought. The injunction granted by the judge in vacation was temporary and appears to have been intended only as an incident to the relief sought in the complaint to preserve the *status quo* until the same could be finally heard. If the court had jurisdiction to hear and determine the cause on the facts stated and grant the relief sought, it could temporarily stay proceedings by injunction as an incident to the exercise of its jurisdiction. The real question in the case is whether or not the circuit court had jurisdiction to grant the relief sought in the complaint.

The functions of the board of assessors in assessing benefits and the board of commissioners in adjusting them on complaint of the property owners is not judicial in the ordinary sense, but it is in the nature of a legislative power. *Pine Bluff Water & Light Co.* v. *Pine Bluff*, 62 Ark. 196; *Mo. Pac. Ry. Co.* v. *Izard County Highway Improvement District*, 143 Ark. 261.

Boards created as special tribunals for certain purposes may, and sometimes do, act in a judicial or *quasi*-judicial capacity, and when so acting their proceedings may be reviewed on certiorari (*State ex rel.* v. *Railroad Commission*, 109 Ark. 100; *Hall* v. *Bledsoe*, 126 Ark. 125), but in the matter now before us the commissioners do not act in such capacity. The acts of the commissioners not being of a judicial or *quasi*-judicial nature, they are not subject to review on certiorari, which is limited to review of judicial or *quasi*-judicial proceedings. *Pine Bluff Water & Light Co.* v. *City of Pine Bluff, supra;* *State ex rel.* v. *Railroad Commission*, 109 Ark. 106. Injunctive relief is purely a matter of equitable jurisdiction, which, under the Constitution of this State, falls within the jurisdiction of separate chancery courts as

now established.  Article 7, section 15, of the Constitution provides that "until the General Assembly shall deem it expedient to establish courts of chancery the circuit courts shall have jurisdiction in matters of equity."  We are of the opinion that the power of the Legislature in establishing separate chancery courts therefore swept away the jurisdiction of the circuit court in matters exclusively cognizable in courts of equity.

Counsel for respondents rely upon the statute (Kirby's Digest, section 3966), which provides that "the judge of the circuit court may grant injunctions and restraining orders in all cases of illegal or unauthorized taxes and assessments by county, city or other local tribunals, boards or officers."  This statute, however, antedated the adoption of the Constitution of 1874 and the establishment of separate chancery courts pursuant thereto, and it is not effective now, for the purpose of retaining in the circuit court matters exclusively cognizable in equity, for the jurisdiction transferred to courts of chancery in the establishment thereof was such jurisdiction as the courts of chancery properly exercise at the time of the adoption of the Constitution.  *German National Bank* v. *Moore,* 116 Ark. 490.  This transfer of equity jurisdiction to separate chancery courts was complete and left no vestige of that jurisdiction in the circuit courts.  Such was the interpretation given by this court in the case of *Merwin* v. *Fussell,* 93 Ark. 336, where we said: "And under these provisions of the Constitution and the statute a citizen and taxpayer has the right to obtain from a court of equity an injunction against the collection of an illegal or unauthorized tax."  See also *Moody* v. *Lowrimore,* 74 Ark. 421; *Harrison* v. *Norton,* 104 Ark. 16.

The framers of the statute creating this improvement district might have provided, as has been done in many similar statutes, for appeals from the board of commissioners to the county court and thence to the circuit court, which would have given the circuit court the

jurisdiction to review the assessments. But that was not done in the framing of this statute, which provides for proceedings in a court of equity, to be begun within a specified time. It clearly falls legitimately within the ordinary equity jurisdiction, because the assessments constitute a lien on real estate. We are of the opinion, therefore, that since the statute provides for no review of assessments by the circuit court on appeal, and, on the contrary, provides exclusively for relief in the chancery court, there is no authority for review by the circuit court on certiorari.

Counsel also rely on the decision in *Pritchett* v. *Road Improvement District, supra,* as sustaining their contention, but in that case it was void orders and judgments of the county court which were reviewed by the circuit court on certiorari.

In the case of *Merchants' Bank* v. *Fitzgerald,* 61 Ark. 607, Mr. Justice BATTLE, speaking for the court, concisely defined the office of the writ of certiorari, as follows: "(1) Where the tribunal to which it is issued has exceeded its jurisdiction; (2) where the party applying for it had the right to appeal, but lost it through no fault of his own; and (3) in cases where it has superintending control over a tribunal which has proceeded illegally, and no other mode has been provided for directly reviewing its proceedings."

This being true, the circuit court has no jurisdiction over the subject-matter set forth in the complaint filed in the proceedings below. The court being without jurisdiction, prohibition is the appropriate remedy to stop further proceedings. The writ of prohibition is therefore awarded in accordance with the prayer of the petitioner to prevent the circuit court from further proceeding in the matters under consideration.

WOOD, J. (dissenting). The authorities are practically unanimous in holding that the high prerogative writ and extraordinary remedy of prohibition "is to be

used with great caution and forbearance, for the furtherance of justice and to secure order and regularity in judicial proceedings, and should be issued only in cases of extreme necessity." 22 R. C. L., p. 5, § 4, and cases there cited.

There is no necessity, as we see it, for the issuance of the writ in this case; and besides the issuance at this juncture is wholly premature. The circuit court has had no opportunity to determine whether it had jurisdiction of the subject-matter set forth in the complaint of McDonald *et al.* Every court has the power to determine *in limine* whether it has the jurisdiction over the subject-matter of the controversies brought before it. To deprive the circuit court in advance of the opportunity and right to decide whether it will entertain jurisdiction is tantamount to an assumption of original jurisdiction by this court, which is contrary to art. 7, § 4, of the Constitution.

It has been the doctrine of this court since 1842 that no prohibition lies from this court to an inferior court until a suggestion of its want of jurisdiction, properly verified, has first been presented to the inferior court. There has been no deviation from this rule until the present case. *Ex parte Williams,* 4 Ark. 537; *Ex parte Blackburn,* 5 Ark. 21; *Ex parte Meechan,* 12 Ark. 70; *Ex parte Little Rock,* 26 Ark. 52; *State ex rel. Butler* v. *Williams,* 48 Ark. 227; *Reese* v. *Steel,* 73 Ark. 66.

In *Ex parte Williams, supra,* this court said: "The rule was, at common law, that no prohibition lay to an inferior court, in a cause arising out of their jurisdiction, until that matter had been pleaded in the inferior court and the plea refused. It must appear, in the suggestion (to the Supreme Court) that the plea was verified and tendered in person during the sitting of the inferior court." The rule is announced in the same language in all the cases.

This doctrine, we believe, is in accord with the great weight of authority. In an exhaustive note to *State* v. *Superior Court*, 111 Am. St. Rep. 925-965, Judge Freeman says: "Whether any special rule of court has been promulgated on this subject or not, undoubtedly, the practice generally prevailing in the United States is not to take any action until it appears that the subordinate tribunal has in some appropriate method had its attention called to its supposed absence or excess of jurisdiction, and has, nevertheless, indicated its purpose to proceed, or it in some other manner sufficiently appears that an application to that court must prove unavailing."

Among the numerous cases cited by the eminent author and annotator in support of the text are cases from our own court. Further on in the note to the case the exception recognized in the majority opinion is referred to, and some cases from other courts are cited to support it, but none from Arkansas.

Of course, the opinion of even as learned a law writer as Judge Freeman as to the effect of our former decisions is not binding on this court. But certainly his opinion is entitled to the utmost respect. If he is correct, and we believe he is, in classifying our cases in line with those holding that the writ of prohibition will not lie unless the inferior court has first had its attention directed to the matter, and if indeed such has been the established rule of practice in this State for three-fourths of a century, and if it is in accord with the practice generally prevailing in the United States, then why change the rule, or engraft upon it an exception which virtually nullifies it? *Stare decisis* should preclude any departure or innovation here. "Without '*stare decisis*,' it would be difficult, if not impossible, to build up and preserve any valuable system of jurisprudence." *Ex parte Hunt*, 10 Ark. 284.

"Controversies should not be opened every time a new judge takes his seat." *Coates* v. *State*, 50 Ark. 333.

·   "It is better to let matters of practice remain settled than to disturb them." *Miller* v. *Fraley,* 21 Ark. 38.

"Public policy requires that decisions of courts of last resort which have been followed and acted upon shall be adhered to, unless great injury and injustice would result." *Rhea* v. *State,* 104 Ark. 162.

The case of *Russell* v. *Jacoway,* 33 Ark. 191, is not in conflict with the other decisions of this court. In that case the issue we have here was not raised. There was no suggestion in the Supreme Court to the effect that no objection had first been made in the inferior court to the exercise of jurisdiction and that the circuit court had not been given an opportunity to determine that question. On the contrary, the opinion in *Russell* v. *Jacoway, supra,* shows that the Supreme Court disposes of the case on the theory that the plea objecting to the jurisdiction of the inferior court had been first properly presented to that court and refused. The court said: "For the circuit court to assume to determine in the first instance," etc. Again, "But by the circuit court's assumption of jurisdiction in the case all further proceedings of the county court have been prevented," etc.

But the majority of the court, while recognizing the rule as above announced by the former decisions of this court, nevertheless hold that there is an exception to the rule where the circuit judge, before whom the cause must be heard when the court subsequently convenes, has in vacation overruled an objection to his jurisdiction to proceed in the matter then pending before him and which must be heard by the court later, and, where as in this case, in this formal response to the application for writ of prohibition he still maintains that the circuit court has jurisditcion. This holding is not correct, for the reason that the circuit judge in vacation and the circuit court are entirely different functionaries. The orders when made by the circuit judge in vacation are not final, but subject to review and change by the circuit court it-

self when it subsequently convenes, whereas the orders of the circuit court, when final, are subjct to review and correction by the Supreme Court.

Application was made to the circuit judge in vacation for writ of certiorari to bring up and to quash the assessment of benefits made by the commissioners and to restrain them from further proceeding with the improvement. Conceiving that he had jurisdiction to issue the writ of certiorari reviewable by the circuit court and, in the meantime, to issue a restraining order, the circuit judge proceeded to exercise such jurisdiction. He issued the writ of certiorari in April returnable to the ensuing September term of the court and in the meantime restrained further proceedings by the commissioners of the district. Now, who can say that the circuit court when it convened at the September term would not, upon a plea to its jurisdiction, after a consideration of such plea, have held that it had no jurisdiction of the matters presented in the application for certiorari? Who can say that the circuit court, after a careful consideration, would not have quashed the writ issued by the judge in vacation? Who can say that the circuit court would not have refused to quash the assessments of benefits made by the commissioners and that the court would have interfered in any manner with the further progress of the work of the improvement district? What prophetic ken has this court of what would be the decision of the circuit court of Craighead County several months in advance of the time when that decision was to be rendered? Who has the omniscience to foretell that the circuit court, although presided over by the same judge, would not entertain different views and decide that it had no jurisdiction?

To show the inaccuracy of the position of the majority and the unsoundness of its logic, let us suppose that before the September term of the court convenes, the Hon. R. H. Dudley, the respondent herein, and the judge who issued the writ of certiorari and the temporary restraining order, dies, or that he is unavoidably detained

by illness or other causes, all of which contingencies are contemplated by art. 7, § 21, of our Constitution. Suppose that under this constitutional provision a different judge has been elected to preside over the court and that such judge entertains entirely different views from his predecessor and that his views are in harmony with the appellant's contention herein, could it then be said that the circuit court had had an opportunity to decide the issue of its jurisdiction and had decided that issue adversely to appellant's contention? Could it then be said that there was any excuse, much less necessity, for the writ of prohibition? Could it then be decided by this court that the lower court had determined that it had jurisdiction when in fact no opportunity had been given that court to pass upon the question, and when, if the matter had been presented to it, it would itself have decided that it had no jurisdiction?

It occurs to us that the only answer to the above questions demonstrates the fallacy of engrafting the exception, now proposed and adopted by the majority, upon the rule heretofore announced and so long adhered to by this court. A rule of practice that would not stand the test and apply to any and all cases that might arise under art. 7, § 21, of our Constitution, is unsound (besides being unconstitutional), and should not be approved by this court.

The rule announced in *Ex parte Williams, supra,* is a sound one. It preserves the proper consideration deference for the opinions and judgment of the inferior tribunal.

Under the so-called exception no allowance is made for a possible, or even probable, change of viewpoint upon the part of the judge himself who reviews in term time his own vacation orders, and no consideration is given to the eventualities of art. 7, § 21, of the Constitution. This is manifestly unjust and unfair to the inferior tribunal which should at least be given the opportunity to first decide upon the question of whether it has

jurisdiction to proceed. We are convinced that there is no exception to the rule in this State and that the majority opinion, therefore, results in overruling the cases heretofore mentioned; and that the issuance of the writ, under the circumstances here detailed, is an exercise of original jurisdiction by this court not contemplated by our Constitution.

For the above reasons Mr. Justice HART and I dissent from that part of the opinion which holds that the writ of prohibition will lie.